UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MAGDALENA VARGO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:15-cv-520-AGF |
| | ) |
| CITY OF ST. LOUIS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This employment discrimination matter is before the Court on Defendant's motion for summary judgment (Doc. No. 32). Plaintiff responded to the motion (Doc. No. 37), and Defendant replied (Doc. No. 41). For the reasons set forth below, Defendant's motion will be granted.

## BACKGROUND

Plaintiff Magdalena Vargo was employed from 1987 through May 2010 by the City of St. Louis, where she worked as a Zoning Specialist before being promoted in 2000 to Lead Zoning Specialist. (Doc. No. 38 at 1.) The City of St. Louis's zoning section is responsible for approving building and occupancy permits for individuals and businesses in the city. *Id.*

Since 2002, Plaintiff's immediate supervisor was Mary Hart Burton, the Zoning Administrator. Plaintiff had served as acting Zoning Administrator prior to Burton's taking over the position, and testified that she believed herself more qualified for the Zoning Administrator position when it was awarded to Burton. (Vargo Dep., August 28,

2012, 170:16-171:9.) Burton had a bachelor's degree in architecture and a master's degree in city planning. Plaintiff held an associate's degree, but not a bachelor's degree. (Doc. No. 38 at 1-2.)

During her employment with Defendant, Plaintiff's job performance was not without incident. In 2004, Burton noted on Plaintiff's performance rating that Plaintiff needed to improve her customer service skills following a complaint received about Plaintiff by the mayor's office. (Doc. No. 38 at 8.) Although the parties dispute the details of the interaction, Burton testified that she felt that Plaintiff's behavior when approached about the complaint was disrespectful and threatening. In 2006, Burton received at least one additional customer complaint about Plaintiff, and held a counseling session with Plaintiff to address the complaint. *Id.* Burton also directed Plaintiff to take a customer service training class at that time; Plaintiff complained to Burton's superiors about having to take the class. In 2007, Plaintiff received "unsuccessful" ratings in three of the five areas of evaluation: customer service, judgment, and work quality. (Doc. No. 38 at 9.) Burton's comments in the evaluation suggested that Plaintiff needed to improve handling customers "politely and professionally." *Id.*

In 2010, as a part of budget cuts, the Lead Zoning Specialist position was eliminated, and Plaintiff was laid off. Plaintiff was 62 years old at the time she was laid off. Thereafter, on June 21, 2010, Plaintiff filed her first Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging she was laid off on the basis of national origin and age, and as retaliation. Plaintiff subsequently filed a lawsuit predicated on her termination, which was tried to a jury in Missouri state court in

October 2013, with judgment entered in favor of the City of St. Louis. The judgment was affirmed by the Missouri Court of Appeals in February 2015. *Vargo v. City of St. Louis*, 456 S.W.3d 99, 100 (Mo. Ct. App. 2015). Also in 2010, following being laid off from her position with Defendant, Plaintiff applied for Social Security Disability benefits on the basis of irritable bowel syndrome, as well as related symptoms and conditions. (Doc. No. 40 at 7.)

In 2011, the City of St. Louis's Building Division had an opening for a Plan Examiner position. This position required an undergraduate degree in planning, architecture, engineering, or a related field. The position was to be filled pursuant to the City of St. Louis's Civil Service Rules, wherein an appointing authority submits a request to the Director of Personnel. (Doc. No. 38 at 3-4; Doc. No. 33-3.) The Director of Personnel then "certifies" a list of the names of the top six qualified candidates, from which the appointing authority fills the vacancy. A Building Division employee who held the Zoning Specialist position and a bachelor's degree was hired to fill the Plan Examiner position, creating a vacancy for the position of Zoning Specialist. (Doc. No. 38 at 3-4.)

The City of St. Louis's Civil Service Rules mandate that persons laid off from a position enjoy the right of certification to the same class of position, should one become available. (Doc. No. 38 at 4; Doc. No. 33-6.) After Plaintiff's termination in 2010, she had been placed on such a "Reemployment from Layoff" list, and on August 5, 2011, the City of St. Louis sent Defendant a letter informing her she had been certified to the list of six candidates to fill the vacant Zoning Specialist position. (Doc. No. 38 at 5; Doc. No.

40 at 3.) Plaintiff was also asked to set up an interview for the position. In addition to Plaintiff, and by permission of the Department of Personnel, the list of certified candidates for the filled Plan Examiner position was also used for the newly-vacant Zoning Specialist position. Therefore, the certified list of candidates for the Zoning Specialist position included Plaintiff and the five unselected candidates for Plan Examiner. *Id.* The Zoning Specialist position required either a bachelor's degree or two or more years of experience working in zoning; Plaintiff was the only candidate on the certified list that did not have a bachelor's degree in architecture, city planning, engineering, or a related field. *Id.*

Burton, as the appointing authority, was allowed to select the candidate that would be offered the Zoning Specialist position. She interviewed all six candidates, including Plaintiff, over the telephone. *Id.* at 6. She hired Denis Beganovic, a 26 year old male, from the list of certified candidates. Defendant asserts, and Burton testified, that Beganovic was hired because he had experience working with the Regional Planning Group and state Planning Group, had experience with graphic mapping and with holding large public meetings, held a bachelor's degree in planning from Missouri State University, and was fluent in Bosnian (which would presumably enable him to communicate with St. Louis's substantial Bosnian population). *Id.* at 6 (citing Burton's testimony at Plaintiff's Missouri state court trial on her previous claims of discrimination; *see* Doc. No. 33-1 at 265-266). Plaintiff argues that Burton did not hire Plaintiff because Plaintiff was over the age of 60, and because Burton was retaliating against Plaintiff for filing the earlier charge of discrimination. *Id.* Defendant does not dispute that Burton

believed Plaintiff to be qualified for the position at the time of her decision. *Id.* at 7. However, Defendant also alleges that Burton believed Plaintiff to be difficult to supervise, argumentative, and resistant to the Zoning Section's movement toward computerization. *Id.*

On January 5, 2012, Plaintiff was found to be permanently and totally disabled by an administrative law judge ("ALJ"). The ALJ determined that Plaintiff had been able to perform her past work for the City of St. Louis because of her proximity to restroom facilities, but that her condition had worsened since her employment. (*Id.* at 10; Doc. No. 33-11.) The ALJ determined that Plaintiff could not maintain competitive employment and that she was "unable to perform any past relevant work." *Id.* Plaintiff was awarded Social Security Disability benefits retroactive to April 25, 2010, and agreed in her deposition that the findings of the ALJ accurately described her medical condition. (Doc. No. 38 at 11; Vargo Dep., 87:18-22.)

In February 2012, Plaintiff submitted another Charge of Discrimination to the EEOC, this time relating to Defendant's decision to hire Beganovic instead of Plaintiff. The EEOC investigated Plaintiff's Charge of Discrimination and issued a determination on November 29, 2013, finding reasonable cause to believe that Plaintiff's allegations regarding age and retaliation discrimination were true.[1] (Doc. No. 39-14.) Plaintiff brought her instant lawsuit on February 23, 2015, in Missouri state court, and it was subsequently removed to federal court pursuant to 28 U.S.C. § 1331. Plaintiff's suit

---

[1] Defendant objects that the EEOC Determination constitutes hearsay and is not admissible, and moreover, is irrelevant to Plaintiff's claims of employment discrimination.

alleges discrimination based on age and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. ("Title VII"). Plaintiff also asserted a Missouri state law claim of intentional infliction of emotional distress.

## SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Metro. Prop. & Cas. Ins. Co. v. Calvin*, 802 F.3d 933, 937 (8th Cir. 2015). In opposing summary judgment, a plaintiff may not "simply point to allegations" in the complaint, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," *Matter of Citizens Loan & Sav. Co.)*, 621 F.2d 911, 913 (8th Cir. 1980). Rather, the plaintiff "must identify and provide evidence of specific facts creating a triable controversy." *Howard*, 363 F.3d at 800 (citation omitted).

## ARGUMENTS OF THE PARTIES

In moving for summary judgment, Defendant first argues that Plaintiff cannot carry her burden of proving a prima facie case of discrimination because she was and is not qualified to perform the job of Zoning Specialist. In support of this argument, Defendant explains that Plaintiff's application for, and subsequent award of, Social

- 6 -

Security Disability benefits on the basis of her irritable bowel syndrome demonstrates that she was not capable of performing the job. Defendant points out that the ALJ's decision on January 5, 2012, found Plaintiff to be permanently and totally disabled and unable to return to any prior work. Plaintiff also agreed in her deposition that the ALJ's findings fairly and accurately described her medical condition. (Doc. No. 38 at 11; Vargo Dep., 87:18-22.)

In the alternative, Defendant argues that even if Plaintiff does make a prima facie showing of discrimination, Defendant had legitimate and nondiscriminatory reasons for its decision not to hire Plaintiff as a Zoning Specialist. Defendant cites Plaintiff's history of conflict with her customers and superiors, and Burton in particular, in support of this argument. Defendant also argues that Plaintiff was the only candidate in the certified list of six submitted for the Zoning Specialist position who did not have a bachelor's degree in a useful or related field, and cites the selected candidate's knowledge of government, experience with public meetings, and fluency in Bosnian as legitimate, nondiscriminatory reasons that he was a superior candidate.

Defendant argues that Plaintiff's retaliation claims should be barred for the same reasons: Plaintiff was not able to perform the job of Zoning Specialist, and even if she could have performed it, there were legitimate, non-retaliatory reasons to select another candidate. Moreover, Defendant argues that the fact that Plaintiff filed a Charge of Discrimination in 2010 and was subsequently not hired for a Zoning Specialist position some 14 months later does not support a causal connection between protected action (filing the charge) and the allegedly discriminatory action. Finally, Defendant argues that

Plaintiff's state law claim of intentional infliction of emotional distress is barred by the doctrine of sovereign immunity because Defendant is a public entity, and Plaintiff cites no exception to this rule of law.

In response, Plaintiff argues that she was fully capable of performing the Zoning Specialist position at the time she applied for it. Citing case law that an award of Social Security Disability benefits does not always preclude an allegation of workplace discrimination, Plaintiff argues that Defendant could have offered her a "reasonable accommodation" that would have allowed her to perform the job successfully. Plaintiff argues that if she had been able to use the restroom frequently, she could have performed the job of Zoning Specialist. She argues that, having performed the job in the past, she knows that the job could have been performed in spite of her disability. Plaintiff argues that she has been able to work as a volunteer despite her disability, and that she has applied for one other position—also a zoning position for a municipal government— despite her disability. With regard to her retaliation claim, Plaintiff asserts that the 14 months between her filing of a Charge of Discrimination (the protected activity) and her non-hiring by Defendant is irrelevant, because her application for Zoning Specialist was Defendant's first "opportunity to retaliate against her." (Doc. No. 37 at 6.)

Arguing that she has established prima facie cases of discrimination based on age and retaliation, Plaintiff next argues that any alternative reaons offered by Defendant are pretextual. Plaintiff argues that Beganovic could not have been more qualified than she, because she had held the exact position for almost two decades, had been employed in the department for some 23 years, and had been promoted from Zoning Specialist to Lead

Zoning Specialist. Plaintiff also cites a history of generally positive performance reviews (with the exceptions already noted). Plaintiff argues that she was to be given "priority," as a former employee who had been laid off, pursuant to Defendant's policy. Finally, Plaintiff argues that the reasons Defendant (through its agents) have given for not hiring Plaintiff have been inconsistent throughout the life of the litigation, with her purportedly subpar job performance only being invoked in recent filings.

Notably, Plaintiff offered no response to Defendant's argument that Plaintiff's state law claim of intentional infliction of emotional distress is barred by the doctrine of sovereign immunity.

In its reply brief, Defendant argues that Plaintiff cannot rely on her own self-serving statements that she was capable of performing the job of Zoning Specialist as countervailing evidence that Plaintiff could perform the position of Zoning Specialist, despite being found disabled. Defendant also argues that Plaintiff confuses the Americans with Disabilities Act ("ADA")—under which an employer may be required to offer a reasonable accommodation—with the ADEA, under which Plaintiff's claim is actually asserted, and which does not require an employer to offer a reasonable accommodation, but instead requires that a plaintiff be able to perform the job to an employer's expectations. Therefore, Defendant argues that the cases cited by Plaintiff—which concern the ADA—are wholly inapposite or are consistent with Defendant's position.

With regard to the retaliation claim, Defendant's reply briefing again suggests that because she was not qualified for the position, her argument fails. Moreover, Defendant

argues that its stated reasons for not hiring Plaintiff have not been inconsistent, and that there is no evidence of pretext.

## DISCUSSION

*Age Discrimination*

Plaintiff has submitted no evidence of direct age discrimination. "A plaintiff may establish her claim of intentional age discrimination through either direct evidence or indirect evidence. [W]here the plaintiff presents indirect evidence of discrimination, the court analyzes her claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 515 (8th Cir. 2011) (internal citations omitted).

Under the *McDonnell Douglas* analysis, the plaintiff has the initial burden to establish a prima facie case of age discrimination. Once she has done so, "the burden of production then shifts to the employer to articulate a legitimate non-discriminatory reason for its employment action." *Id.* (quotation and citation omitted). If the employer offers such a reason, "[t]he burden . . . shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the stated non-discriminatory rationale was a mere pretext for discrimination." *Id.* (quotation and citation omitted).

To establish a prima facie case of age discrimination based on a failure to hire, a plaintiff must prove "(1) that the plaintiff was in the protected age group (over 40); (2) that the plaintiff was otherwise qualified for the position; (3) that the plaintiff was not hired; and (4) that the employer hired a younger person to fill the position." *Id.* (quotation and citation omitted). Defendant's first argument for summary judgment focuses solely

on the second factor—whether Plaintiff has failed to properly establish that she is otherwise qualified for the position, in light of Plaintiff's receipt of Social Security Disability benefits, which are predicated on her being totally and completely disabled. The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 1382c(a)(3)(A). Plaintiff's disabled status therefore creates a genuine conflict with her position in the instant suit that she was qualified for the position of Zoning Specialist.

In *Lloyd v. Hardin County, Iowa*, 207 F.3d 1080 (8th Cir. 2000), the Eighth Circuit addressed whether an individual found completely disabled can properly maintain a discrimination claim (albeit, in the context of the ADA as opposed to the ADEA). Applying the standard set by the Supreme Court in *Cleveland v. Policy Management System Corp.,* 526 U.S. 795 (1999), the Eighth Circuit explained that its precedent rejected a per se approach and instead allowed that "a plaintiff may, for purposes of an ADA claim, resist a motion for summary judgment, despite a prior representation of total disability [and a finding by an ALJ of the same], by presenting 'strong countervailing evidence' that he or she is in fact qualified to perform the essential functions of his or her job." *Lloyd*, 207 F.3d at 1083 (8th Cir. 2000) (quoting *Downs v. Hawkeye Health Servs. Inc.,* 148 F.3d 948, 951 (8th Cir.1998)). Moreover, the Eighth Circuit explained that a plaintiff "must additionally overcome the presumption created by his prior allegation of total disability for purposes of obtaining Social Security disability benefits." *Id.* at 1084. It also cited the district court's reasoning that absent strong countervailing evidence,

"prior representations of total disability will generally carry sufficient weight to grant summary judgment against the plaintiff." *Id.* at 1083 (internal citation and quotation marks omitted). Although the plaintiff in *Lloyd* argued that he could perform the job at issue with a reasonable accommodation, the Court explained:

> [T]he restructured job proposed by Lloyd would necessarily entail reallocating one or more of the essential functions of [the] job, which he cannot perform with or without reasonable accommodation. Therefore, Lloyd has failed to provide an explanation "sufficient to warrant a reasonable juror's concluding that [the plaintiff] could nonetheless 'perform the essential functions" of [the] job[.]

*Id.* at 1084-85 (internal citations omitted). Thus, the Eighth Circuit concluded that the plaintiff's explanation for his inconsistent assertions failed to overcome the presumption, created by his prior allegation of total disability and the Social Security Administration's determination of the same, that he was not qualified to perform the job and thus, he could not maintain a claim of discrimination. *Id.*

Although *Lloyd* addressed inconsistency with a prior finding of disability in the context of an ADA case, courts have extended this analysis to cases brought under the ADEA. *Detz v. Greiner Industries, Inc.*, 346 F.3d 109, 117 (3d Cir. 2003), like the case at bar, involved a plaintiff who was released from employment and found disabled by the Social Security Administration, and subsequently brought an ADEA claim against his former employer. Attempting to reconcile his claim with his disabled status, the plaintiff argued that he was capable of performing the job he had previously held because it was tailored to his physical limitations, but that he could not hold any other job; "[i]n other words, [the plaintiff argued] there was only one job in the economy that he was capable

of performing." *Id.* at 114. In finding the plaintiff's positions irreconcilable, and affirming summary judgment, the Third Circuit explained:

> While *Cleveland* only specifically addressed a conflict between SSDI and ADA claims, the analysis is not limited in its application to cases involving those particular statutory and administrative schemes. Like an assertion that one is a "qualified individual" for ADA purposes, a declaration that one is a "qualified individual" under the ADEA is a "context-related legal conclusion." Therefore, a prima facie showing under the ADEA that conflicts with earlier statements made to the SSA is subject to the same analysis, as the reasoning of the Court in *Cleveland* also applies in the context of the ADEA.

*Id.* at 117.

The Court agrees with the Third Circuit's reasoning and application of the *Cleveland* standard for assessing irreconcilable positions taken in ADEA claims by those found disabled, and finds it to be a compatible and logical extension of the Eighth Circuit's precedent as set forth in *Lloyd*. *See also Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 892–93 (7th Cir. 2005), as amended (Nov. 21, 2005) (affirming summary judgment on an ADEA claim where the claimant had applied for Social Security Disability insurance and attested to being unable to work, and finding that the plaintiff's "statement . . . that he was unable to work facially contradicted any claim that he was performing to his employer's legitimate expectations").

Therefore, applying *Lloyd* to Plaintiff's ADEA claims in the instant matter, the Court must decide whether Plaintiff has offered strong countervailing evidence to overcome the presumption created by her prior allegation of total disability. Plaintiff has argued that she would have been able to perform the role of Zoning Specialist, because

she knew from experience that she would be located in close proximity to a bathroom. Plaintiff alleges she was successfully performing the position at the time she was laid off, including for a short time after April 25, 2010, the disability onset date alleged by Plaintiff and determined by the ALJ. This single, self-serving representation appears to be Plaintiff's only evidence for her argument, supported in the record only by Plaintiff's own deposition testimony. Defendant argues that this self-serving testimony is insufficient to create a genuine issue of fact for purposes of summary judgment.

The Court determines that, even if it considers Plaintiff's statements, they do not constitute "strong countervailing evidence" that Plaintiff could perform the job of Zoning Specialist, sufficient to rebut the presumption created by the ALJ's finding that Plaintiff is permanently and totally disabled. As Defendant highlights, the record also suggests that Plaintiff must sometimes use the bathroom "ten times in the morning," has regular difficulty sleeping, and sometimes must lay down two or three times per day. (Doc. No. 38 at 11.) Moreover, the ALJ determined that Plaintiff's disabling condition had worsened since she left employment with Defendant. (Doc. No. 33-11 at 7-8.) Plaintiff herself agreed that the findings of the ALJ—including the specific finding that Plaintiff's past work exceeds her residual functional capacity—fairly and accurately described her medical conditions. *Id.* at 11.

In light of the record as a whole, no reasonable juror could conclude that Defendant's own assurances that she can perform the job constitute "strong countervailing evidence" to rebut the presumption created by the ALJ's explicit finding that Plaintiff is permanently and totally disabled, and cannot "maintain competitive [full

time] employment[.]" *Id.* at 10. Like the plaintiffs in *Lloyd* and *Detz*, Plaintiff here has relied on her own assessment of her ability to perform the job; and like the plaintiffs in *Lloyd* and *Detz*, she has failed to offer evidence sufficient to rebut the presumption that, based on her disabled status, she is unable to perform the essential functions of the job. Therefore, she cannot establish a prima facie case of discrimination, and her claims must fail as a matter of law.

Furthermore, even were the Court to conclude that Plaintiff met her burden of establishing a prima facie case, Defendant would still be entitled to summary judgment. Under *McDonnell Douglas*, to rebut the presumption created when the plaintiff meets the requirements of the prima facie case, a defendant must articulate a legitimate, nondiscriminatory reason for not hiring the plaintiff. *McDonnell Douglas*, 411 U.S. at 802. Here, Defendant has articulated a legitimate nondiscriminatory reason for its decision not to rehire Plaintiff; namely, Plaintiff's history of conflict with her customers and supervisors, including her disagreement with Burton, and the qualifications of Beganovic, who brought additional qualifications (such as his Bosnian language skills) to the position.

In response, Plaintiff has not offered affirmative evidence of pretext, but has argued only that Defendant's "inconsistent" reasons for not hiring Plaintiff are sufficient. In fact, the Court finds that Defendant and its agents have consistently offered that Plaintiff was not hired because another candidate was more qualified. *See, e.g.*, Burton Dep., Sep. 21, 2012, 83-85, and Oswald Dep., Sep. 21, 2012, 36. Additional justification of Defendant's reasoning as the case progressed, to specify that Plaintiff's history of

conflicts and poor performance was a part of the calculus that she was not as qualified as the selected candidate, does not, on its own, constitute evidence of pretext. For this additional reason, summary judgment is appropriate.

*Retaliation*

For similar reasons, judgment will also be entered for Defendant on Plaintiff's cause of action for retaliation. Again, Plaintiff presented no direct evidence of retaliation, so the Court applies the *McDonnell Douglas* burden shifting standard. *See Jackson v. UPS, Inc.*, 643 F.3d 1081, 1087–88 (8th Cir. 2011). Plaintiff "first must demonstrate a prima facie case of retaliation to survive summary judgment." *Id.* at 1088. To meet this burden, Plaintiff must show that (1) she engaged in a protected activity; (2) Defendant subsequently took an "adverse employment action" against her; and (3) there was a causal connection between the protected activity and the adverse employment action. *Id.*

In a failure-to-rehire retaliation case, the case law again requires that a plaintiff demonstrate she is qualified for the position in question. *See, e.g., Green v. City of St. Louis, Mo.*, 507 F.3d 662, 666 (8th Cir. 2007) (finding in the context of a failure-to-rehire case that "[t]o establish a prima facie claim for discriminatory failure to hire, a plaintiff must show that 'he applied *and was qualified* for a job for which the employer was seeking applicants'") (emphasis added). The Court again finds the *Detz* and *Lloyd* analysis applicable, and as explained above, Plaintiff has failed to offer evidence that she was qualified for the position despite the Social Security Administration's finding that she was permanently and totally disabled. Therefore, Plaintiff has failed to establish a prima facie case of retaliation.

Furthermore, and also as described above, even assuming a prima facie case of retaliation had been established, Defendant has offered legitimate and nondiscriminatory reasons for its hiring decision, and Plaintiff has not offered evidence of pretext. Summary judgment is therefore warranted with regard to Plaintiff's claims for retaliation under Title VII and the ADEA.

*State Law Claim of Intentional Infliction of Emotional Distress*

Plaintiff failed to offer any opposition to Defendant's argument that sovereign immunity bars Plaintiff's claim for intentional infliction of emotion distress, and neither is the Court independently aware of any exception to the sovereign immunity doctrine that should apply to Plaintiff's claim. *See* Mo. Rev. Stat. § 537.600. "Under Missouri law, sovereign immunity is waived only in cases involving injuries directly resulting from the negligent act of a public employee arising out of the operation of a motor vehicle within the course of the person's employment, or for injuries caused by the condition of a public entity's property." *Shell v. Ebker*, 2006 WL 1026982, at *10 (E.D. Mo. Apr. 14, 2006) (citing Mo. Rev. Stat. § 537.600.1(1)-(2)). Public entities also may waive their sovereign immunity to the extent that they are covered by liability insurance. *Southers v. City of Farmington*, 263 S.W.3d 603, 609 (Mo. banc 2008). But none of these exceptions apply to Plaintiff's claim for intentional infliction of emotional distress. Therefore, judgment will also be entered for Defendant on this claim.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Defendant's Motion for Summary Judgment (Doc. No. 32) is **GRANTED**. A separate judgment will accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 1st day of August, 2016.